Case No. 12-1002 et al., Teamsters Local Union No. 509, Petitioner v. National Labor Relations Board Mr. Axelrod for the Petitioner, Mr. Engelhardt for the Respondent, and Mr. Gallo for the Intervenor In June of 2008, Teamsters Union decided or concluded that there would be a decline in the number of movies produced in South Carolina and closed its referral list to new applicants. In September of 2008, the Transportation Coordinator for the Employer reached the same conclusion and told Mr. Coggill that if he wanted to work in Season 3 of Army Wives, he should get on the referral list. He tried to do that and was told that the list had been closed. And the Administrative Law Judge found it is undisputed that Mr. Coggill is not on the list based on the closing of the list. In a case where motivation is an issue... Had he tried to get on the list before then? He never did. But had he tried, would he have been admitted to the list? Other people moved from being a traveler to going on the list. And the record shows that... Who weren't members of Local 509? Yes. By definition, a traveler is a member of some other local. And there's at least one person, Don Cook, who moved from being a traveler to going on the list. There's absolutely no reason to believe that had Mr. Coggill tried to go on the list prior to its being closed, he would have been rejected. At the start of the hearing... And this becomes a crucial issue. At the start of the hearing, the Administrative Law Judge said, Is this a members-only list that only members of Local 509 can get on the movie referral list? And Council for the Union said, Normally when the list is open, it's open to everybody, non-members, members of other local unions, and so on. And that's pages 34 and 35 of the appendix. It's true that when the list was closed, it was closed to all people. And the evidence shows that there are at least eight people who tried to get on the list after it was closed, and they were placed on a wait list. It's also true that when the list was closed, the people on the list were members of Local 509. There is no evidence, however, that prior to the closing of the list, any person had been refused placement on the list, and no person had been coerced to join the union to be a member. And in fact, one of the issues we raised when Mr. Coghill tried to join the union is that you couldn't join the union before you had a job. So by definition, the people who were trying to get on the referral list were applicants who didn't yet have a job and therefore couldn't join the union. And it's clear that the company, when it was distributing these membership applications and check-off applications, was telling people if they wanted to check off, they could. If they wanted to join, they could. There was no evidence of any pressure. And in fact, there is evidence that people checked off to the unions that was their home union, not to Local 509. There are at least six people in the record that checked off to Local 391. So let me ask you, was the list, was the evidence that the list was operated in this manner, that the employer had, or the union, let me start again, that the employer first had to hire people who were members of Local 509, that when there were no longer 509 members on the list, then the employer could hire non-509 members who were on the list? Not exactly. Not exactly. All right. But was there evidence? There's an exclusive list. I know, but remember my question. Yes. Was there evidence in the record that that's the way the list was operated? Not exactly, because the evidence is you have to get on the list. And people on the list had to be hired before people who were not on the list. Are we clear about my question? Your question is that they have to be Local 509. There are ten names on the list. Excuse me? There are ten names, in my hypothetical, there are ten names on the list. The first six are members of Local 509. Is the evidence that the employer could not hire number nine on the list until the first six had been referred for employment? No. No? The list does not include or identify which people on the list are union members. Okay. And the list includes name, telephone number, and an address. And it's up to the employer to go down that list and find people. There's nothing on that list that would tell the employer who's a union member and who isn't. So let me be clear. If you're the employer and I'm the union, Mr. Fletcher, and you say you need four drivers, do I just hand you the list or do I give you the names of people on the list? The evidence is clear that at the beginning of each movie, the employer requested the list and the local would send the list. If that list was exhausted, they would ask for a supplemental list. But it's clear that the employer made the calls, the employer had the right to refuse to hire anyone on the list, and the employer made the decisions. Why did Mr. Fletcher get so upset with the employer when the employer had hired some people and there were some local 509 people who had not been hired? Because there is a requirement that the employer go through the referral list before it hires people who are not on the list. In the case that you're questioning about, Mr. Coghill was employed not from the list, and there were two people who were on the list who were given part-time jobs instead of full-time jobs, and the union's position is that because it's an exclusive list, people on the list go before people who are not on the list. And that's by definition what an exclusive referral hall is. And so Dawn Cook is the example that's relevant in the time period we're talking about? Dawn Cook was initially a member of Local 71. There's a card in the record in which she submits a check-off card to Local 509 and says, I want to go on the 509 list. She is the only person, based on what's in the evidence, that started out as a traveler and became on the list. And did that happen after 2008? No. It couldn't have happened after 2008 because the list was closed. And, in fact, Dawn Cook was a charging party in a case that was settled here. The resolution closing the list said it was closed to everybody except people who had been on the list and had been removed from the list because of failures to pay the referral fee or dues. She was removed from that list prior to that. She was reinstated to the list prior to the Season 3 of Army Wives and was sent to Army Wives. And she remained a member of Local 71? I don't think so. She became a member of 509? She did become a member of 509. Her relationship to 71, I don't know. So why is she relevant here? Because the NLRB says they wouldn't have accepted Mr. Coghill because he was a traveler, and she is evidence that they did accept people who were travelers. But she was a member of 509. But she was a traveler first, and she asked to go on the 509 list. She was put on the 509 list. When she was referred to a movie, she signed a checkoff card and became a 509 member. So you did have to become a 509 member to get a referral? No. She had to ask to be on the referral list. After she got the job... So you're saying it was just after the fact that she joined 509? Yes. After she got the referral? After she was hired. Because it's the employer that distributes the membership applications. Wow. At the moment the list closed. Yeah. At the moment the list was closed, all of those on the list were union members? Yes. But the NLRB's idea of continuing discrimination presupposes that there was some discrimination involved in who got on the list. And the record is very clear. There is no evidence as to how people got on the list prior to Mr. Cognell asking to go on the list. To your argument, it's just coincidence that at that moment in time there were no non-members on the list, that historically there had been non-members on the list? Everyone had been a non-member when they went on the list. When they got hired, they had to make a choice. In South Carolina, it's the right-to-work state. Right. They had to decide whether they wanted to join the union or not. But the job comes first, the membership comes second. And that's what the record shows. There is no evidence that a single person was ever refused to go on that list prior to the closing of the list. And therefore there can't be the perpetuation of discrimination, because there was no discrimination. What about the so-called B list, the non-existent B list? Well, the B list is an evidence, and it includes eight people who tried to get on the list after the name list was closed. Didn't the secretary who testified have some difficulty affirming that there was such a list? It's not clear that she made the list. She seemed unaware that there was a list, correct? She wrote a note to Mr. Cogdill saying, we're going to put you on a wait list. So she must have known there was a wait list. She was told that, we're going to put you on the wait list, right? She was told to tell Mr. Cogdill that. She did. And in fact, there was a wait list, and in fact, he's on it. Where is the wait list in here? Page 83. Thank you. If there's a job first, membership later, what exactly does it mean? Why is anyone on the waiting list? Do they have a job? They don't have a job? The wait list of these people who wanted to go on the movie referral list, they couldn't go on the movie referral list until the union uncapped it or decided that there was enough work to support more people on the list than there were. These people did not work through the union during the period in question. They were waiting to go on the movie referral list, which meant that they had not yet been submitted to any employer for a movie. Does that necessarily mean they were not employed by any employer? They could have been employed if the employer had exhausted the union. So if everyone on the list was employed at some moment, then these persons could be employed. Why can't anybody in the world who happens to know Mr. Seiler get a job, or if not Mr. Seiler, the equivalent of Mr. Seiler at any other movie company? Well, why did Mr. Seiler tell Mr. Cogill to go join the union for season three? Mr. Seiler said join the union and get on the list. I'm under a lot of pressure from Mr. Fletcher. Mr. Seiler knew that the union was pressuring the company to use his exclusive list, and the NLRB went to great lengths to prove that this was an exclusive list, and it is. That means the employer has to go through the names on the list before he can call his friends, before he can call travelers, before he can call other people. Mr. Seiler knew what Mr. Fletcher knew, which is that there weren't going to be enough work, enough movies being shot. You just used the phrase exclusive list. What did you mean by that? The NLRB distinguishes between an exclusive list. No, what did you mean by exclusive list? An exclusive list means the employer has to go through the referral list before he can go to other people. That's the definition the NLRB uses for an exclusive list. You see, the trouble, at least that I'm having with it, is this exclusive list seemed to have exclusive membership to it, right? To get on that list, you seem to have to be joining the union. There is no evidence that to get on the list... Except the fact that everyone on the list was... Yes, but is that proof of discrimination? The Supreme Court's decisions on referral systems presume that the mere fact that there is a system, a referral system, creates some idea that people should join the union. Why? Why does that? Because people throughout the South, people throughout the North, join unions because there's a benefit in being in the union. You get to vote on your officers, you get to vote on the business agents. Participation, membership is participation. That's the only way you can get referred to a job. Excuse me? Yes, okay. That would be the illegal part, preference for a job. Yes. But there is no evidence that people went on that list as a result of any pressure from the union. Because I'm looking at the ALJ and he describes what is an exclusive hiring hall. And he cites NLRB cases and he points out, you know, the fact that there may be some exceptions doesn't render the list non-exclusive. We have not disputed that it was an exclusive referral list. I understand. And your one example for what, season one or season two, is Don Cook. Yes, because we didn't know we had to find any more. There was no testimony about how anyone got on that list. It's by coincidence that Don Cook. But there is testimony what the employer was told by the local head that he had to do. The employer was told to use the list. Use the list. And in order to get on that list, you could get on the list, but you couldn't get a referral unless you joined the local. No. Well, that was the employer's understanding of what Mr. Fletcher was telling him. But that isn't what Mr. Fletcher was doing. There is no evidence that people were pressured to get on that list, none. Well, Mr. Fletcher may have deniability, but the record evidence is what Mr. Seiler understood the local was telling him. The local was telling him to use the list. The local was not telling him that you had to be a member to get on the list, because when he was distributing these cards, presumably he was reading what he got back, and people were checking off dues to other locals. They were not members of the union. All right. We'll hear from counsel. I don't know what time I have left. All right. Thank you. I'll give you a couple of minutes. Counsel will respond. May it please the Court. My name is Robert Englehart for the NLRB. When this case began, the union's defense was that they didn't prevent Mr. Coghill from being hired at all. They didn't have an exclusive hiring list. The trial in this case and the Board's decision conclusively proved that they did have an exclusive hiring list, and that did prevent Mr. Coghill from being hired. This Court has talked about many of the factors that informed the Board's decision about why that list was discriminatory, and the first factor being, until the time of the complaint, the evidence was that there were only members on that list, and that's unlawful discrimination based upon membership status. But the second factor, and it's not been talked about, is I would like to refer to the... Counsel, I'm sorry. I don't understand it. Closing the list when everyone on the list was a union member is a violation? No.  But to point to evidence of discrimination up until the complaint and all the time before the closing of the list, everyone was a member, and that was an important factor. But the second factor, and I would refer the Court to Addendum 1 to our brief, are the two forms that Mr. Coghill was required to sign when he started working for Army Wives. And if I may read the first two sentences. He signs, and this is submitted to Teamsters Local 409, I am seeking employment within your jurisdiction once your active movie referral list is depleted. I understand and agree that I am by no means transferring to your referral list. He is required to sign a document to keep that job at Army Wives, saying he's not trying to get on the referral list. So we have questions about did Mr. Coghill try hard enough to get on the list. He's required to sign a document that says he's not trying to get on the list. The third factor that the Board considered was the whole incident in May of 2008 where Mr. Fletcher approached Mr. Seiler, who was the company's representative who hired the drivers, and pressured him to dismiss any transferred employees like Mr. Coghill until union members were fully employed. Once again, it was not giving Mr. Coghill a fair opportunity to be on the list. That's the whole point in this case, that Mr. Coghill never had a fair opportunity to be on the list. So that the union then turns to the closure of the list one month later in June 2008 as its defense. But finally, we even see in that closure, telling Mr. Coghill that he can go on a B-list. And as the Board found, I think it's at 824 of the appendix, the Board's decision, the B-list didn't exist. That even was a charade to waive Mr. Coghill off from pursuing any further remedies in this case. Let me just stay with the form for a minute, your first point. I understand and agree I'm by no means transferring to your referral list. Well, that's true, right? The referral list was closed, but... May I interrupt? No, Your Honor. He signed this in 2006. Ah, thank you. He was required to sign the first day on the job when he showed up for the pilot of Army Wives. He was employed for Season 1 and Season 2 of Army Wives because the referral list was depleted. So that's how he was able to get the job without being on the referral list. But then, the rubber meets the road, so to speak, in Season 3. And there aren't enough jobs for the people on the referral list. And the referral list is closed, and Mr. Coghill is not on the list. And the Board's finding in this case is that he's not on the list because of continued discriminatory treatment toward him. Is there testimony from Mr. Coghill that he wanted to transfer at that point? Well, once he's signed this form, I don't know how he can say he wanted to transfer when he's signed a form that says... No, I understand that when he signed the form, was it something he was being required to do against his will because he really wanted to transfer? Right. Or was he happy taking temporary work in 509's jurisdiction and then returning to his home look? He wanted to keep his job with the pilot of Army Wives, so he signed this form. What the evidence does show is... Keep it or just get it the first time? Well, when he's hired... He's hired? Sorry, he's been hired. Okay. I think the important point is that he did... All throughout his employment in Season 1, the pilot in Season 1 and Season 2, he paid local 509 a service fee of 2% of his salary, which is a significant sum. And I know the union says, but there's an additional fee of $15 required of members when they're not working, and he didn't affirmatively sign up to pay that. And I think the board's finding in this case is that that's being used now as kind of a pretext that he... If anything was ever said to Mr. Coghill about completing anything necessary to get on the referral list, he would have wanted to do that, and he thought he was complying with everything he had to. He thought it was being run fairly until it wasn't. You said there was no B list, so what do we make of page 683? Well, I think we make something of the finding of the board that says, I'll read the sentence on page 24. Fletcher admitted at the hearing, and he's the union business agent, that the respondent did not maintain a B list. I don't have the cite for Mr. Fletcher's testimony, but I do have that from the board. Okay, so he says there's no B list, and here's a list that says wait list for the movie list. I would suggest that it was something going through the motions, but Fletcher's testimony indicates it was never an operative document, never used. Is it page 24 of his testimony? No, that was the finding of the board. That's the finding of the board. You don't have the reference of the testimony? I don't have the reference. I'm sorry. I can supply that if the court so wishes. Is it in here somewhere? Well, I'm confident that the board's finding that Fletcher admitted at the hearing. Well, I've got the finding. Is the underlying testimony among the things that were used in here? Yes, it is. So, in essence, I would just sum up by saying that substantial evidence supports the board's finding that the closure of the referral list at that point was just a pretext for continued discrimination against Mr. Coghill, and at that point, it only cemented that discrimination, and it can't be independently erected, at least as against Mr. Coghill, as the reason for why he shouldn't have been employed in season three. And your response to this continuous reference to Dawn Cook? She was a member, and I don't know whether she was asked to sign the form on AD Dean 1, for example. And she was never visited by Mr. Fletcher, or Mr. Fletcher never visited the employer and attempted to get her out. All of this is just a substantial evidence question? Yes, it is, Your Honor. Thank you. Thank you. Good morning, and may it please the Court. My name is James Young, and I represent Mr. Coghill, who made repeated efforts, as documented in the record and credited by the board, to become a member of Local 509. What we have here is a classic case of home cooking. Mr. Coghill repeatedly tried to join the union. He did everything he could to satisfy their requirements, and he was not permitted to do so. He was repeatedly put off by Mr. Fletcher. He was repeatedly given excuses. And in that sense, the board's decision is supported by substantial evidence. Let us recall that Dawn Cook's situation was resolved pursuant to settlement with the board. That's how she got her name on the list. It wasn't a matter of the union's fair treatment of her. It wasn't a matter of the union's magnanimity. It was a matter of the board and the union reaching a settlement on her unfair labor practice charges. And that's precisely how Mr. Coghill got his job back in Season 4 of Army Wives. Once he had filed his charge, the union acceded to, obviously, in order to minimize its exposure for back pay. But it is black-letter law that a union can be held for employer conduct that it promotes. And in this case, in Season 3 of Army Wives, purely at the assistance of Mr. Fletcher, Mr. Seiler, who wanted to bring Mr. Coghill back to the production, did not do so because of the pressure being brought to bear solely by Local 509. And I think it's important to recall, and I think it's important, there's a distinction being made here between the excuses given by Mr. Fletcher to Mr. Coghill that he had to have a job to get on the list. Well, Mr. Coghill had a job. Granted, the production for Army Wives were in separate seasons, and I think we all know enough as far as general knowledge is concerned about the way television works and whether or not there's going to be a next season. But at all points in this case, Mr. Coghill was a valued employee of Army Wives, and Mr. Seiler was happy to bring him back, enthusiastic to bring him back. And the sole reason he did not do so was because of the threats and the comments and the pressure being brought to bear. What threat was to shut down the production? The threat was to shut down the production. That never manifested itself, but obviously Mr. Seiler and Ms. D'Alessandro took it seriously. In fact, at page 341 of the appendix, the Court can read for itself. The representatives of Army Wives, of ABC Studios I guess technically, made it clear that it was because of the unions list that Mr. Coghill was not brought back for the production.  I thank the Court for its attention and for allowing me my three minutes here today. Thank you. All right, counsel for petition? Before you begin, may I ask you, did you argue this before the administrative law judge? No. No? No. Okay. I filed the exceptions from the law judge's decision to the board and the case before this Court. Okay. Counsel for the NLRB has cited to the form that Mr. Coghill was sent in 2006, and that's on page 590 and 591 of the record. There is, however, no evidence that Mr. Coghill actually signed those forms. But the form themselves asks people to make a distinction. Do I want to be on the list or do I want to remain as a traveler? The people who signed the form on page 590 opted to remain as a traveler. Then if you look at page 743, you have Dawn Cook's form, which she signed in October of 2006, and it indicates she wants to become a member of Local 509, where in the past she had been a member of Local 71. And she asked to transfer, and that's clearly on page 743. She got this transfer application from the employer, and that's how she transferred. She went back on the list in 2008 because of the settlement of her own NLRB case, but she had been on the list before. She had been removed from the list because of a dues issue, and she went back on the list pursuant to a settlement. She was not a new person coming onto the list. The closing of the list is deemed to be lawful. Because the closing of the list is lawful, as a general rule, the union has the obligation to follow the policy of its referral hall, and deviation from that referral hall policy is a violation. So if the union closed the list lawfully and then didn't honor the closing of the list, that would be a violation. The NLRB says because it lawfully closed the list and adhered to that policy, it's a violation also. That's wrong. It can't be right. There is, again, no evidence that Mr. Poggio made any effort to join the union, Local 509, prior to September, October, January of 2009, September, October of 2008, after the list was closed. Had he attempted to do so beforehand, there was never any evidence that he would have been refused. Unless you have any other questions, I thank you. Thank you. We'll take the case under advisement.
judges: Rogers, Griffith, Ginsburg